**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

UNITED STATES OF AMERICA     )
                              )     No. 1:21-cr-00041-CLC-CHS
v.                               )
                              )
JOE JUNIOR HUMPHREY     )
                              )

**REPORT AND RECOMMENDATION**

**I.    Introduction**

This matter is before the Court upon Defendant Joe Junior Humphrey's Motion to Suppress [Doc. 64] which the District Court has referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C). On September 24, 2020, police executed a search warrant at Defendant's home in Chattanooga, Tennessee. Defendant seeks to suppress evidence found during the search of his home. For the reasons stated herein, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

**II.    Facts**

On September 21, 2020, Officer Lee Wolff applied for a search warrant. In addition to information about Officer Wolff's training and experience, the affidavit supporting probable cause stated the following:

> 2.    That on August 17, 2020 your affiant received information from a confidential informant.

> 3.    The said informant advised me that within the last 72 hours said informant was on the premises of the potential defendant in this case, Joe Humphrey, who resides in or occupies and is in possession of the following described premises, to wit; 1539 Bradt Street Chattanooga, Hamilton County, Tennessee. While there said informant saw legend and/or narcotic drugs including Heroin, the same being on said premises in the possession of and control of said Joe Humphrey. 1539 will be a brick duplex with the numbers 1539 displayed on the mailbox sitting in front of the said duplex. When

1

standing on Bradt Street facing the duplex the door to be entered will be on the right side. See attached diagram herein incorporated into this search warrant affidavit.

4. The said informant further advised your affiant that Joe Humphrey is dealing heroin from the above described location. The informant went on to say that Joe Humphrey drives a silver in color BMW and a black Mercedes.

5. The said informant further advised your affiant that Joe Humphrey has been arrested in the past in Georgia for drug related crimes. The said informant advised that there is a large amount of short term traffic at the said location.

6. Your affiant was able to corroborate some of the information provided by the said informant. Affiant has conducted surveillance on the said location at which time observing the short term traffic. This traffic is consistent with known drug houses. Affiant has also observed Humphrey driving a silver BMW bearing Tennessee tag CXP556 and a black Mercedes bearing Tennessee tag CCB082 which was leaving the said address. Affiant has also observed the said vehicles parked in the yard and in front of the said duplex. Affiant also conducted a computer check on Joe Humphrey and the said tags at which time finding that Joe Humphrey was arrested in Georgia for possession of cocaine with the intent to distribute, possession of methamphetamine. Joe Humphrey was also arrested in Tennessee for possession of crack cocaine for resale. Tennessee tag CXP556 should be displayed on a 2006 BMW registered to Rachel Satterfield, Tennessee tag CCB082 should be displayed on a 2003 Mercedes registered to Rachel Satterfield address 1622 Miriam Lane Chattanooga Tennessee 37421.

7. The said informant has made at least three "controlled buys" from the above said address for your affiant, with one of these buys occurring within the last 72 hours. The following controls were in place: Under the direction and control of your affiant, the said informant was physically checked or searched by your affiant for any type of contraband, your affiant found none on the informant who was visually monitored entering the premises. The informant conducted the hand to hand drug transaction, specifically money for Heroin. You affiant then observed the informant leave the said premises. Your affiant personally inspected the Heroin and found it to match in color, texture, shape, and odor the controlled substance known as Heroin. Your affiant followed appropriate procedures or safeguards which ensured that the currency supplied to the informant prior to the purchase was spent as directed, and your affiant again physically checked or searched the informant and found no other contraband on the informant. This purchase was made by the informant, the informant made no stops or had no contact with any individuals before handing Heroin to your affiant.

2

8. The said informant has provided your affiant information on at least five occasions in the past that have lead to the arrests and convictions of individuals in violation of narcotic laws, this includes arrests for Cocaine, Crack Cocaine, and Marijuana.

9. The said informant provided Officer Narramore information on at least three occasions in the past that have led to the arrest and convictions of individuals in violation of narcotic laws, which has been corroborated by the affiant.

10. The affiant further states that the Police records show that at least one complaint was filed by Sgt. M Bolton about possible drug activities in the 1400 block of Bradt Street.

[Doc. 64-1 at 2-3].

When agents executed the warrant on September 24, 2020, they found "a FN, 9-millimeter pistol, a shotgun shell, a gun light, cocaine, two jars of marijuana, suspected ecstasy pills, two sets of digital scales, and $276 US Currency." [Doc. 68 at 3].

## III.    Standard of Review

Defendant's legal challenges under his present motion relate solely to the sufficiency of the search warrant, and Defendant has not requested or alleged grounds for a *Franks*[1] hearing. In such situations, "[w]ith great deference toward the issuing judge's determination, federal courts examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). "[A]n issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

---

[1] For a defendant to challenge the truthfulness of the information in a search warrant affidavit, *Franks v. Delaware*, requires that he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [] the allegedly false statement is necessary to a finding of probable cause." 438 U.S. 154, 155-56 (1978).

3

## IV.    Discussion

### A.    Probable Cause

Defendant asserts a number of claims under various headings in his challenge of the search warrant. The Court will address them in the order and under the headings as they appear in Defendant's Motion [Doc. 64].

### i.    August 17 Confidential Informant Report[2]

Defendant asserts that the long passage of time between the confidential informant ("CI") observing heroin at the Defendant's residence and the signing of the search warrant over 30 days later undermines the strength of probable cause. Defendant cites *United States v. Payne*, 181 F.3d 781, 790 (6th Cir. 1999) to highlight a distinction between mere possession versus ongoing drug activity. Defendant claims his mere possession means the information would grow stale more quickly.

However, Defendant's claim of mere possession is inapposite. The CI reported seeing "legend and/or narcotic drugs including Heroin" at Defendant's residence, but he also reported that Defendant was "dealing heroin from the above described location." [Doc. 64-1 at 2]. Beyond that, Defendant's argument that 30 days elapsed between the CI's observation of heroin at the Defendant's residence ignores subsequent[3] events. The CI made three controlled buys, one of which was within 72 hours of the search warrant application. The CI's report and the controlled buys indicate ongoing drug activity, including very recent activity, which clearly distinguishes this case from the facts in *Payne*.

---

[2] [Doc. 64 at 2].
[3] The timing of the controlled buys is discussed more fully below.

4

### ii. The Affidavit Contains No Proof that Defendant Has Drug Convictions[4]

Defendant complains that the information in the affidavit regarding various drug arrests of Defendant "should carry no weight in the probable cause determination." The Court understands the point Defendant is trying to make; however, his argument misses the mark because Defendant's arrest record was not included to support a determination that probable cause existed to establish that illegal drugs would be found in Defendant's residence. Rather, Defendant's arrest record was included to demonstrate Officer Wolff's efforts to corroborate the information provided by the CI. Paragraph 6 of the affidavit, where the arrest information is contained, is entirely focused on corroborating the CI's information. Thus, the arrests play a role in establishing the credibility of the CI. And, of course, the CI's information was used to support the probable cause determination.

### iii. There is Insufficient Information to Establish the Informant's Reliability[5]

Defendant makes two principal arguments with respect to the Informant's alleged unreliability. First, Defendant complains about a lack of details regarding previous arrests and convictions of other drug offenders stemming from past information provided by the CI. Defendant says it is unclear "whether this information was provided weeks, months or years prior to the execution of the warrant." [Doc. 64 at 4]. However, Defendant cites no caselaw supporting his position that the passage of time would meaningfully impact the credibility of the CI. If the CI provided accurate information to law enforcement a decade ago that led to multiple arrests and convictions for drug offenses, it doesn't follow that the CI's credibility would be enhanced simply because such events had occurred more recently. Further, Defendant's claim is in direct opposition to controlling caselaw. *See United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) ("[O]ur

---

[4] [Doc. 64 at 3].
[5] [Doc. 64 at 4].

5

precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.")

Second, Defendant complains that no time frame was given in the affidavit regarding observations made through surveillance at Defendant's residence. However, review of the totality of circumstances in assessing probable cause requires a "practical, commonsense" approach. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008). Here, a plain, commonsense reading of the affidavit leads to the conclusion that the surveillance of Defendant's residence took place between August 17, 2020, when Detective Wolff was informed by the CI of drug dealing by Defendant at his residence, and September 21, 2020, the date Officer Wolff applied for the search warrant.

Thus, neither of Defendant's arguments regarding the CI's reliability are persuasive. Additionally, the Sixth Circuit has said that controlled buys alone can support a CI's reliability. *See U.S. v. Coffee*, 434 F.3d 887, 893-95 (6th Cir. 2006).

### iv.    The Controlled Buys are Stale[6]

Defendant claims that the controlled buys are stale and cannot be used in the probable cause determination. Specifically, Defendant complains that two of the three controlled buys lack dates while the third controlled buy was not made within 72 hours of the execution of the warrant.

Regarding the two undated controlled buys, Defendant cites *United States v. Boyd*, 422 F.2d 791, 792 (6th Cir. 1970) for the proposition that "[i]nformation is considered stale and unreliable if it is impossible to tell from the affidavit when the circumstances giving rise to probable cause occurred." [Doc. 64 at 5]. But the commonsense conclusion is that the controlled buys took place in the five weeks between August 17, 2020, and September 21, 2020. As noted

---

[6] [Doc. 64 at 5].

above, a practical reading of the affidavit places the controlled buys after Officer Wolff was informed by the CI on August 17, 2020, of drug dealing by Defendant at 1539 Bradt Street, and before the search warrant application on September 21, 2020. Thus, it is possible to tell from the affidavit when the circumstances giving rise to probable cause occurred.

Regarding the third controlled buy, Defendant cites no caselaw supporting the idea that a controlled buy must be within 72 hours of the execution of a search warrant. And, indeed, such an argument lacks foundation. This is so because the question at hand is whether there was probable cause at the time the search warrant application was placed in the magistrate's hands, not whether probable cause existed sometime after that determination had already been made. Additionally, the Sixth Circuit has found that probable cause did not become stale by virtue of a three-day span between a controlled purchase and the issuing of a warrant. *See United States v. Archibald*, 685 F.3d 553, 555 (6th Cir. 2012) (abrogated on other grounds).

The search warrant application occurred within 72 hours of the third controlled buy, and the three controlled buys occurred within the span of five weeks. Both the pattern of drug activity and the recency of the third controlled buy weigh against the claim that the controlled buys were stale and unreliable. Thus, Defendant's argument in this regard in unpersuasive.

### v.     The Description of the Alleged Controlled Purchases Lacks Specificity[7]

Defendant argues that the affidavit was insufficient because it did not include an appropriate level of detail with respect to the description of the controlled purchases. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). The affidavit details controls that include physical searches of the CI before and after the transaction,

---

[7] [Doc. 64 at 6].

7

visual monitoring of the CI entering and leaving the residence, retrieval of the suspected heroin, and safeguards ensuring the currency given to the CI was spent as directed. [Doc. 64-1 at 3]. The description of the controlled buys could have been more detailed; however, the details included in the affidavit were sufficient to support the magistrate's probable cause determination.

### vi.     There is No Evidence of Continuous Drug Activity at the Residence[8]

Defendant argues again that the lack of dates on the first two controlled buys means "[t]here is no way to know whether those alleged buys occurred a week, month, or years prior to the execution of the search warrant." As discussed above, a commonsense reading of the affidavit places the controlled buys in the five weeks leading up to the search warrant application. Additionally, Officer Wolff possessed the information from the CI, combined with his own personal observations, of short-term traffic at the residence—a pattern consistent with known drug houses. Thus, Defendant's argument in this regard is also unpersuasive.

### vii.    Reports of Neighborhood Drug Activity Do Not Support Probable Cause[9]

Defendant avers that "the complaint of *possible* drug activities in the 1400 block of Bradt Street" is far too speculative to provide any support for probable cause. [Doc. 64 at 7]. The Court agrees with Defendant in this regard.

### viii.   Conclusion on Probable Cause

Defendant's arguments focus on individual factors that may undermine whether the affidavit supported probable cause when viewing the totality of the circumstance. Though one of Defendant's arguments eliminates from consideration a minor bit of information in the affidavit,

---

[8] *Id.*
[9] [Doc. 64 at 7].

8

the question is whether the rest of the information in the affidavit is enough to support probable cause.

Excluding from consideration the complaint of possible drug activities in the 1400 block of Bradt Street, the Court finds that the affidavit clears the low bar of probable cause. Officer Wolff received information from the CI regarding Defendant's drug activities at Defendant's residence. The CI's credibility was established though past experience, corroboration of information given by the CI, and the execution of three controlled buys with appropriate controls in place. The observation of short-term traffic at Defendant's residence and the execution of three controlled buys in a five-week span indicated ongoing drug activity. The execution of a controlled buy within 72 hours of the application for the search warrant further protected against evidence of drug activity being stale. In sum, sufficient probability existed that evidence of drug crime would be found at Defendant's residence at the time of the search.

**B.      Good Faith Exception**

Even if Defendant could show that the issuing judge's probable cause determination was improper, the *Leon*[10] good faith exception could apply. This exception requires courts to "ask whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (internal quotation omitted).

Defendant claims that reliance upon the validity of the search warrant would be objectively unreasonable because "there are insufficient facts to support a conclusion that drugs would be found at his home at the time of the search." [Doc. 64 at 10]. Defendant then goes on to list things he feels are lacking in the affidavit. *Id.*

---

[10] Under *United States v. Leon*, evidence should not be excluded if there was "objectively reasonable law enforcement activity," especially good faith reliance on a warrant. 468 U.S. 897, 919-20 (1984).

9

The Court disagrees with Defendant's position. A reasonable officer would have believed the warrant was constitutionally permissible because it contained significant indicia of probable cause. Officer Wolff gave a substantial explanation of his training and experience related to drug investigations. The CI gave information on drug dealing by Defendant at his residence. The CI had provided information at least eight times in the past that led to drug arrests and convictions. Officer Wolff corroborated several pieces of information given by the CI. Officer Wolff observed short-term traffic at Defendant's residence that was consistent with activity at known drug houses. The CI conducted three controlled buys of drugs at Defendant's residence with appropriate controls executed by Officer Wolff. The controlled buys were within five weeks of the search warrant application, with the third controlled buy taking place within 72 hours of the application.

In short, the search warrant presented solid support for probable cause upon which a reasonable officer could rely. Thus, even if Defendant could show that the search warrant lacked probable cause, the good faith exception would apply.

## V.      Conclusion

For the reasons stated herein, it is **RECOMMENDED**[11] that Defendant's Motion to Suppress [Doc. 64] be **DENIED.**

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[11] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

10